```
                    UNITED STATES BANKRUPTCY COURT
                    FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )       Chapter 7
ZACHARY SCOTT OVEL,             )
                                )       Bankruptcy No. 06-01150
     Debtor.                    )
                                )
UNITED STATES TRUSTEE,          )
                                )       Adversary No. 07-09048
     Plaintiff,                 )
                                )
vs.                             )
                                )
ZACHARY SCOTT OVEL,             )
                                )
     Defendant.                 )
```

**ORDER RE: COMPLAINT**

This matter came before the undersigned for trial on November 6, 2008. Assistant U.S. Trustee Janet Reasoner appeared for the U.S. Trustee. Debtor/Defendant Zachary Ovel was represented by Hugo G. Burdt. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**STATEMENT OF THE CASE**

U.S. Trustee seeks denial of discharge for false oath and concealment or transfer of assets. Debtor failed to disclose assets and recent payments to creditors in his schedules. He also transferred real estate and stock to his mother to the detriment of other creditors. Debtor responds he disclosed everything to his bankruptcy counsel and relied on counsel's expertise and advice.

**FINDINGS OF FACT**

At the hearing, U.S. Trustee presented testimony of Chapter 7 Trustee Renee Hanrahan and Exhibits 1 through 28. The testimony and exhibits support the "Time Line" set out in the parties' Joint Pretrial Statement filed April 14, 2008, Doc. 27, at pages 4 through 8. This Time Line constitutes the parties' "Joint Statement of Admitted or Uncontested Facts."

Debtor's Statement of Financial Affairs, Question 3(a) is answered "None." This question requires a list of all payments to creditors Debtor made within 90 days prepetition in amounts higher than $600. Thus, Debtor did not disclose prepetition payments he made on his mortgage of $6,000 or $7,000 and a motorcycle loan payment of $600. He did, however, disclose these payments at the § 341 meeting of creditors. Debtor did not disclose on schedules or at the § 341 meeting prepetition payments to the ARA Gallery of $1,500 and the Cedar Rapids Country Club of more than $3,000 in three separate payments, all within 90 days prepetition.

Debtor testified that he thought he only had to list payments beyond what was normally due. He stated that he interpreted the question wrong and only became aware of the $600 requirement at the § 341 meeting. He said that was the first he heard of it.

U.S. Trustee asserts that Debtor failed to disclose several types of assets in schedules and at the § 341 meeting. Trustee discovered these assets after reviewing Debtor's bank statements and other financial documentation. These issues are discussed below with Debtor's explanation for not including them in his bankruptcy schedules.

Debtor purchased $6,773 of goods from ARA Gallery in April 2006. The invoice shows the items include artwork, framing, rugs and other furnishings. Debtor made three payments to ARA Gallery, including one payment of $3,273.55 a few days after filing his Chapter 7 petition. Debtor testified that some of these items were gifts to his wife. He stated he itemized all his belongings for his attorneys and they made the decision to list all his household furnishings with a value of $2,000.

Debtor paid approximately $1,500 for an Apple laptop two days prior to filing his Chapter 7 petition. He received the laptop postpetition. Debtor testified that his attorneys told him this was exempt as a tool of the trade. He also did not list a lawn tractor he purchased from Sears as an asset because he was told that it, too, was a tool of the trade.

Debtor purchased exercise equipment in December 2005 and jewelry in March 2006. Debtor also listed jewelry with significant value in a personal financial statement he drafted for U.S. Bank dated 1-10-06. The only jewelry Debtor disclosed in his schedules was a wedding band valued at $500. Debtor testified that much of the jewelry was his wife's. The exercise equipment and the jewelry he recently purchased were gifts for

2

his wife.  Debtor stated he did not disclose gifts because his attorneys told him it was not necessary.

Trustee has filed an adversary proceeding against Debtor, Adv. 08-09110, to recover, among other things, commissions from Debtor's work as a real estate salesman or broker.  In his schedules, Debtor did not disclose four commissions totaling more than $12,800 from closings which occurred within two days after he filed his Chapter 7 petition.  Trustee asserts these commissions are property of the estate.  Debtor testified that he believed he did not have to disclose these commissions because the closings did not occur until after the petition date.  He stated that it was his attorneys' strategy to file the Chapter 7 petition just before the closings to avoid having to include these commissions as assets.

Debtor had a hot tub at his former residence.  U.S. Trustee asserts Debtor should have disclosed his transfer of this asset.  Debtor testified that he sold the hot tub to some construction workers in early 2006 and did not think about it again.

Finally, U.S. Trustee asserts Debtor did not disclose any cash on hand in his Chapter 7 petition and schedules.  Bank statements and other financial information indicate Debtor made significant cash withdrawals the day before he filed his Chapter 7 petition.  Debtor paid some bills with cash prepetition.

In 2005 and 2006, Debtor refinanced loans on real estate.  Based on appraisals by a friend, Debtor obtained loans secured by his previous residence and a new residence on Kegler Court.  The refinancing allowed Debtor to retain Lot 8 on Kegler Court free of liens, with the intent of building a spec house on the lot through his company, GRAND Enterprizes Inc.  In May and June 2006, however, Debtor transferred his interest in GRAND and in Lot 8 to his mother for no consideration.  Debtor's mother subsequently put Debtor's in-laws, the Tiemeyers, on the title to Lot 8.  This transformed Debtor's $100,000 debt to the Tiemeyers from unsecured to secured.  Debtor disclosed the transfers to his mother on his bankruptcy schedules.

U.S. Trustee asserts that Debtor lived a lavish lifestyle, far beyond his means.  Debtor's income in 2005 was approximately $80,000.  Debtor's wife grossed $10,000 as a notary in 2005.  At that time, they moved into a home with an appraised value of $1.2 million and Debtor owned 2004 and 2006 Cadillac Escalades and a 2004 Harley motorcycle.  Bank and credit card statements and Country Club invoices show purchases of luxury goods and significant charges at restaurants and clubs.

Debtor asserts he relied on the advice of his attorneys and any omissions in his schedules arose from the attorneys' drafting decisions. He testified that he turned over all his financial information and specifically reviewed it with his attorneys. Debtor stated he did not disclose gifts to his wife on the advice of counsel. The laptop computer and lawn tractor were not included as assets on advice of counsel because they were exempt. Debtor testified he itemized all his household goods with purchase values and garage sale values and his attorneys decided to value all his personal assets at $2,000.

At the hearing, Debtor testified: "I presented all the information, and even did my own kind of handwritten one, turned it over to them [his attorneys] and they typed it up." Debtor's handwritten version of his bankruptcy petition and schedules is not included in the record. Debtor stated that at the time he signed his bankruptcy petition, he was in a hurry and did not extensively review it.

Debtor identified his attorneys as Steven Howes and John Titler. At the hearing, he called Attorney John Titler to testify. In mid-2006, Mr. Titler began working at Aegon, first as an independent contractor, with full-time employment beginning August 22, 2006. Prior to that time, Mr. Titler practiced bankruptcy law for approximately thirty years. When he transferred to Aegon, he became associated with the Howes Law Firm in order to handle any matters arising out of his former private practice.

Mr. Titler testified that his memory was vague regarding meetings with Debtor in the summer of 2006. He recalled that Debtor provided the law firm with extensive financial information. Additionally, as was the law firm's practice, Debtor provided a hand-drafted petition with schedules and statements which the law firm relied upon in preparing Debtor's bankruptcy filing. Although the attorneys and their assistants did not go through all the financial information Debtor presented to them, they used it as reference material. Mr. Titler stated that it was his practice to advise bankruptcy clients to disclose all their assets, including exempt assets and gifts, and to list all payments exceeding $600 in the 90 days prepetition. This information is required by the Statement of Financial Affairs portion of a Chapter 7 petition.

## CONCLUSIONS OF LAW

U.S. Trustee's objections are governed by 11 U.S.C. § 727(a), which states in pertinent part:

4

>    (a) The court shall grant the debtor a discharge, unless –
>
>    . . .
>
>       (2) the debtor, with intent to hinder, delay or defraud . . . has transferred . . . or concealed, or permitted to be transferred . . . or concealed –
>
>          (A) property of the debtor, within one year before the date of the filing of the petition;
>
>    . . .
>
>       (4) the debtor knowingly and fraudulently, in or in connection with the case –
>
>          (A) made a false oath or account.

"Because denial of discharge is a 'harsh and drastic penalty,' § 727 is 'strictly construed in favor of the debtor,' though its purpose remains to prevent abuse of the bankruptcy process." In re Smith, 373 B.R. 895, 900 (Bankr. N.D. Iowa 2007) (quoting In re Korte, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)).

### FRAUDULENT TRANSFER OR CONCEALMENT OF PROPERTY

To support denial of discharge under § 727(a)(2), U.S. Trustee must show by a preponderance of the evidence that "(1) the act complained of was done within one year prior to the date of petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate." Korte, 262 B.R. at 472; In re Sandiford, 394 B.R. 487, 490 (B.A.P. 8th Cir. 2008). Actual intent can be inferred from the facts and circumstances surrounding the debtor's conduct. Korte, 262 B.R. at 473.

### FALSE OATH

To establish that Debtors made a false oath under § 727(a)(4)(A), U.S. Trustee must prove by a preponderance of the evidence that: "(1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case." In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005). Section

727(a)(4)(A) makes clear that the Bankruptcy Code requires nothing less than a full and complete disclosure of any and all property interests of any kind.  In re Korte, 262 B.R. 454, 474 (B.A.P. 8th Cir. 2001); In re Tripp, 224 B.R. 95-98 (Bankr. N.D. Iowa 1998).

Statements made by a debtor in the bankruptcy petition and during the meeting of creditors are made under oath.  Smith, 373 B.R. at 901.  The question of a debtor's knowledge and intent under § 727(a)(4) is an issue of fact.  In re Sears, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (citing In re Olson, 916 F.2d 481, 484 (8th Cir. 1990)).  "Intent under § 727 can be established by circumstantial evidence.  Statements made with reckless indifference to the truth are regarded as intentionally false."  In re Bauder, 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005).

The element of materiality encompasses more than value.  "The subject matter of a false oath is material . . . if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property."  Smith, 373 B.R. 901.  This definition of materiality makes the omission of even a relatively modest asset material, if the omission was fraudulent and knowing.  Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992).

## RELIANCE ON COUNSEL'S ADVICE

Reliance on an attorney's advice may excuse acts that otherwise bear indicia of fraud.  In re Sendecky, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002).  This affirmative defense may prevent a finding of actual fraud if the advice is reasonable and the attorney was fully informed before giving it.  In re Markey, 378 B.R. 594, 604 (Bankr. D. Minn. 2007).  When fraudulent intent is an issue, advice of counsel is a factor to be considered unless the party should know that failure to disclose an asset is forbidden by law.  In re Patterson, 70 B.R. 124, 128 (Bankr. W.D. Mo. 1986).

## ANALYSIS

Debtor filed his bankruptcy petition on September 27, 2006.  In April 2006, Debtor deeded Lot 8 on Kegler Court to his mother.  In June 2006, he transferred all stock in GRAND Enterprizes, Inc.  Debtor did not receive any consideration for these transfers.  Rather, Debtor's mother gave Debtor's in-laws, the Tiemeyers, joint title to the property.  The result was to make the Tiemeyers' $100,000 claim against Debtor secured, rather than unsecured.  This chain of events satisfies the first three

          Document      Page 7 of 8

elements of § 727(a)(2) for denial of discharge.  Debtor made transfers of his property within one year prior to the date of petition filing.  The final element is Debtor's intent to hinder, delay or defraud creditors.

The circumstances surrounding Debtor's conduct leads the Court to conclude Debtor possessed the requisite fraudulent intent.  Debtor pursued a complicated series of transactions to refinance two properties, using appraisals prepared by one of Debtor's friends which, in hindsight, gave inflated values for the real estate.  At the time, Debtor's father-in-law was asking for a progress report regarding the $100,000 loan.  By transferring Lot 8 to his mother, Debtor was able to give his in-laws a lien through her subsequent transfer of a property interest to them.  The Court finds that Debtor intended to hinder or defraud other creditors by clearing the title to Lot 8 to secure his debt to his in-laws.  Thus, U.S. Trustee has satisfied the elements of § 727(a)(2) to deny Debtor's discharge.

The Court also concludes that Debtor made a false oath under § 727(a)(4)(A) and concealed property under § 727(a)(2) through material misstatements and omissions in his petition, statements and schedules.  Debtor failed to disclose thousands of dollars of payments to creditors, gifts and personal assets.  Trustee was required to ferret out Debtor's financial affairs by combing through bank and credit card statements and subpoenaing information from third parties.

Debtor urges that his schedules were prepared by his attorneys, with omissions and mistakes which should not be attributable to him.  The Court finds this characterization of events unbelievable.  Debtor admits that he presented his attorneys with his handwritten version of his bankruptcy schedules.  Attorney Titler testified that it was his practice to have clients draft their own schedules after which he would review them and law firm staff would type a final copy for the client's signature.  It appears that this is exactly what happened in this case and Debtor's claims that misstatements on the schedules were attributable to his attorneys are not credible.

Debtor also testified that he did not have time to review the final petition and schedules because his attorneys were in a hurry to file them.  This excuse for Debtor's failure to properly disclose property and transfers is unavailing.  Not only did Debtor personally draft the schedules, his signature on the petition is a verification of their accuracy.

    Debtor's schedules, made under oath, are false.  Debtor knew he was not fully disclosing all of his assets, gifts and payments to creditors as required by the schedules.  In light of all the circumstances, the Court concludes that Debtor prepared his bankruptcy petition and schedules with fraudulent intent.  Thus, the Court will deny Debtor's discharge under § 727(a)(4)(A) for false oath and under § 727(a)(2) for concealment of property.

    **WHEREFORE,** U.S. Trustee's Complaint to Deny Discharge is GRANTED.

    **FURTHER**, U.S. Trustee has proven all elements of 11 U.S.C. § 727(a)(2) and (a)(4)(A) by a preponderance of the evidence.

    **FURTHER**, Debtor Zachary Scott Ovel's discharge is DENIED.

    **FURTHER**, judgment shall enter accordingly.

    DATED AND ENTERED: December 3, 2008

*/s/ Paul J. Kilburg*

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE